McMILLIN, C.J.,
for the Court:
¶ 1. Ronnie McLaughlin was convicted for aggravated assault by a Wayne County Circuit Court jury despite his assertion that the shooting, which he did not deny, was done in self-defense. McLaughlin’s trial counsel then sought, by written motion, to have his conviction set aside based upon allegations, among other things, that he had “a severe mental condition.” The same day that motion was filed, another attorney filed a separate motion for a new trial in which it was alleged that “the Court violated the Defendant’s constitutional right to a fair trial by failing to allow the Defendant a mental evaluation at the State Psychiatric Hospital at Whitfield.” That motion also raised for the first time a claim that McLaughlin’s trial attorney was so ineffective in his efforts to represent McLaughlin as to violate McLaughlin’s Eighth Amendment constitutional right to counsel. The trial court denied McLaughlin any relief as to either of his post-trial motions and McLaughlin then perfected this appeal.
¶ 2. McLaughlin’s sole issue presented on appeal is whether he received effective assistance of counsel in his efforts to defend against the criminal accusations brought by the State. McLaughlin asserts a number of different alleged failings on the part of defense counsel; however, the only allegation of any significance is the claim that trial counsel failed to adequately pursue the ramifications of McLaughlin’s mental condition.
¶ 3. We do not find merit in McLaughlin’s argument. Therefore, we affirm his conviction.
I.
Facts
¶4. The facts of the case are not in dispute. The State proved that McLaughlin shot the victim, Steve Whitfield, point blank in the chest after an argument. McLaughlin did not deny the shooting. Rather, at trial, his contention was that he believed Whitfield was preparing to injure him and that he shot in self-defense.
II.
The Defendant’s Psychological Condition
¶ 5. Medical records from Pine Belt Mental Health Care Resources indicate that McLaughlin, in October of 1992, was diagnosed as suffering from mental retardation and schizophrenia. In this appeal, McLaughlin alleges that this information raises two significant problems with the conduct of his trial counsel, either of which would warrant reversal. First, he says that his counsel was ineffective for not investigating and pursuing a possible insanity defense. Second, he urges that his counsel was incompetent for his failure to discover the fact that McLaughlin was not mentally capable to stand trial under applicable criteria.
A.
Potential Insanity Defense
¶ 6. Insofar as the record reveals, defense counsel did not seek a professional psychological examination of McLaughlin on behalf of his client. Neither did he formally seek any assistance from the trial court in obtaining an evaluation to deter *115 mine whether an insanity defense might be appropriate.
¶7. One aspect of an ineffective assistance claim is that, but for the deficient performance, there is a substantial likelihood that the outcome of the trial would have been different. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992). In this case, therefore, that means that in order to reverse, this Court would have to be reasonably satisfied that, had defense counsel pursued an insanity defense, it would have resulted in McLaughlin being found not guilty by reason of insanity.
¶ 8. Mississippi follows the historic M’Naghten Rule to define those instances where a defendant may escape punishment based on his mental incapacity. Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990). That rule requires a showing that, at the critical time, the defendant, because of diminished or impaired mental functioning was either (a) unable to understand the difference between right and wrong, or (b) was unable to appreciate and comprehend the consequences of his actions. Id.
¶ 9. McLaughlin testified three times in the course of the trial. The first time was when the court was making an inquiry into his mental fitness to stand trial after the court first became aware of the 1992 diagnosis revealed in the Pine Belt Mental Health Care Resources records. The second time was when he testified before the jury concerning the incident itself. Finally, McLaughlin testified at the hearing on his post-trial motion. We have carefully reviewed that testimony and find, in each instance, McLaughlin appeared alert, able to comprehend the nature of the questions put to him, and to respond appropriately. On occasion in cross-examination, he seemed able to anticipate the direction of the interrogation and shade his response to blunt any potential damage arising out of his answers. We are satisfied, after our review of McLaughlin’s performances on the stand that, despite any previous diagnosis of mental retardation, he did not come close to being so mentally deficient as to lack an appreciation of the consequences of his action, the second aspect of a possibly successful M’Naghten insanity defense. Hunter v. State, 489 So.2d 1086, 1090 (Miss.1986).
¶ 10. Admittedly, the first aspect of M’Naghten insanity — an inability to distinguish between right and wrong — is not necessarily dependent on diminished intellectual capacity. However, during the hearing on McLaughlin’s post-trial motion, McLaughlin, in an exchange with the State’s attorney, was quite articulate in discussing the distinction between right and wrong, conceded that he had been well-trained in such matters as a child, and was quick to distinguish between proper and improper conduct in certain fictional situations posed by the State’s attorney. McLaughlin went so far as to concede that, on the day of the shooting, he understood that an unprovoked shooting of the victim would be wrong. His explanation for the shooting continued to be that it was done in an act of self-defense because he had previously observed a pistol handle protruding from the victim’s pants pocket.
¶ 11. The law, though it requires defense counsel to be vigorous in his efforts to defend his client, does not require him to pursue matters that, on their face, appear vain and useless. The law further presumes that every person is sane and may be held criminally responsible for their wilful acts. Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990); Herron v. State, 287 So.2d 759, 761-62 (Miss.1974). Based on the record before us, we are not convinced that an insanity defense had the slightest chance of success, and we, therefore, decline to find defense counsel’s per *116 formance deficient for his failure to further investigate that possibility.
B.
Incompetency to Stand Trial
¶ 12. McLaughlin alternatively alleges that his trial attorney was ineffective for not more vigorously asserting a claim that McLaughlin was mentally incompetent to stand trial because of his inability to comprehend the nature of the proceedings or to effectively assist his counsel in the preparation and presentation of his defense. Chase v. State, 699 So.2d 521 (¶ 3) (Miss.1997) (citing Strickland v. Washington, 466 U.S. 668, 668-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
¶ 13. Though trial counsel did not affirmatively advance the proposition to the trial court that McLaughlin was not competent to stand trial — perhaps for the substantially likely reason thát he could not, in good faith, do so — counsel did make the fact of McLaughlin’s 1992 diagnosis known to the court in advance of trial. Based on that information, the trial court conducted its own pre-trial inquiry into McLaughlin’s mental fitness to stand trial to determine whether grounds existed for a mental examination under Uniform Circuit and County Court Rule 9.06. At that hearing, McLaughlin, as we have already observed, appeared lucid, reasonably articulate, knowledgeable of the nature of the proceedings and the accusations against him, and fully competent to assist in his defense. The trial court, upon making essentially these findings of fact, declined to order an examination by an expert.
¶ 14. There is nothing in this record that convinces us that, had defense counsel more vigorously pursued an examination, the following events would have occurred: (a) the trial court would have altered its conclusions and ordered an examination by a qualified psychiatrist, (b) the psychiatrist would have concluded that, in the expert’s opinion, McLaughlin was incompetent to stand trial, and (c) at a subsequent full-scale competency hearing, the court would have concluded, upon consideration of all relevant evidence including the expert’s opinion, that McLaughlin was incompetent. To the contrary, we find it substantially likely that the trial court would have continued in its opinion, amply supported by the available evidence, that McLaughlin was fully competent to stand trial and that there was no legitimate reason to investigate the matter further. Thus, even if it is conceded for sake of argument that trial counsel failed to insist on an examination through incompetence rather than an honest belief that there was not proper ground to do so, that failure does not require reversal. There simply is no basis to conclude that, but for this failure, the outcome of the trial would have been different. Cole v. State, 666 So.2d 767, 775 (Miss.1995).
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.